Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Bradley K. King (SBN 274399)
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

WITTELS MCINTURFF PALIKOVIC
Steven L. Wittels*
J. Burkett McInturff*
Tiasha Palikovic*
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com
(* *pro hac vice* applications forthcoming)

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE WOOD, individually and on behalf of all others similarly situated, | ) Case No. 3:20-cv-04125 |
| | ) |
| Plaintiff, | ) **CLASS ACTION COMPLAINT** |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| STUBHUB, INC.; and JOHN DOES 1 to 10, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

**INTRODUCTION**

Plaintiff Stephanie Wood ("Plaintiff"), by and through her undersigned counsel, files this Class Action Complaint against Defendant StubHub, Inc. and JOHN DOES 1 to 10 (collectively, "StubHub" or "Defendants"), individually and on behalf of a class of similarly situated individuals, and alleges, upon personal knowledge as to her own actions, and upon investigation of counsel as to all other matters, as follows:

**OVERVIEW OF DEFENDANTS' UNLAWFUL PRACTICES**

1.      This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news of the efforts to combat the novel coronavirus COVID-19. Beginning in early March 2020, social distancing, shelter-in-place orders, and efforts to "flatten the curve" prompted the nationwide cancelation of sporting events, concerts, and other large gatherings as most of the country locked down. StubHub is the "world's largest ticket marketplace" and *for years* prior to COVID-19 had made a "FanProtect™ Guarantee" that ticket purchasers like Plaintiff would receive full refunds for cancelled events. The COVID-19 cancelations and Defendants' trademarked FanProtect Guarantee should have meant that StubHub ticketholders like Plaintiff were promptly refunded their hard-earned money—money consumers now need more than ever in a time when many of StubHub's customers have lost their jobs and are suffering financial hardship. Yet after the pandemic hit, Defendants retroactively changed their cash refund policy and began refusing consumers the refunds long-promised by the FanProtect Guarantee. Instead, Defendants began offering expiring coupons for future purchases on StubHub's website.

2.      This is a bait and switch on a global scale. The FanProtect Guarantee is at the bedrock of StubHub's business model. For example, just weeks before the pandemic hit, at a hearing before the House of Representatives Committee on Energy and Commerce, Stephanie Burns, StubHub's Vice President and General Counsel, testified on February 26, 2020 that "StubHub's FanProtect Guarantee is the hallmark of our business and it is why we have earned the trust of fans around the globe."[1] Notably,

---

[1] *Available at*: https://docs.house.gov/meetings/IF/IF02/20200226/110588/HHRG-116-IF02-Wstate-BurnsS-20200226.pdf

when Plaintiff bought her tickets from StubHub in October 2019 Defendants' website stated in multiple places that "[y]ou'll get a refund if your event is cancelled and not rescheduled."[2]

3.      The whole point of the FanProtect Guarantee is that it placed the risk of loss onto StubHub. This assumption of risk is what allowed StubHub to convert the largely underground scalpers market into more than $1 billion in annual revenue. The consuming public relied on this guarantee in purchasing their tickets from StubHub. Yet the truth is that StubHub's assumption of the risk turned out to be hollow. As soon as the risk materialized, the company went back on its agreement with consumers *en masse*. To be sure, COVID-19 is a catastrophic event beyond Defendants' control, but the inescapable reality is that the costs of this catastrophe must fall on the party that explicitly assumed the risk. This is precisely what risk-assumption is for and is precisely why StubHub has *for years* guaranteed that the cancellation risks would fall on it rather than consumers.

4.      In the early days of COVID-19 StubHub actually appeared to be taking the high road.  On March 8, 2020, StubHub's President emailed StubHub customers including Plaintiff to "personally reach[] out to you regarding the current Coronavirus situation" because "[w]e know it's an unsettling time for everyone and our hearts go out to those impacted."  The email's subject line was "Coronavirus Update: We have your back" and was meant to reassure customers that "**StubHub is here for you**." (Emphasis in original).  Consistent with Defendants' FanProtect Guarantee the email also emphasized that "[i]f you bought tickets on StubHub to an event that is cancelled, you have two options:

        **1. Receive a full refund of your purchase**

        **2. Receive a coupon for 120% of your original purchase**

(Emphasis in original)

5.      Yet just days later Defendants changed tack, abandoned StubHub's longstanding FanProtect Guarantee, and started refusing consumers' refund requests. On March 25, 2020, without so much as an email to consumers, StubHub changed the terms of its FanProtect Guarantee on its website, now stating that "if the event is canceled and not rescheduled, you will get a refund or credit for use on

---

[2] Defendants recently scrubbed StubHub's website of these references but Google's cache prevented these items erasure from the internet.

a future purchase, as determined in StubHub's sole discretion (unless a refund is required by law)."

6. On March 27, 2020, Sports Business reporter Darren Rovell tweeted[3] about StubHub's new policy and observed as follows:

> Instead of full refunds for canceled events, they changed it to a COUPON worth 20% more than the value of the ticket. As pointed out by @don_shano, this is not only absurd (fans deserve their $ back), it's unethical and likely illegal.

7. StubHub responded that "[w]e appreciate our fans & want to create an offer of value given the difficult circumstances. To thank fans for their patience we are offering 120% credit. We will continue to provide refunds to buyers where required by law. This model is common practice in a number of industries."[4]

8. This was pure customer service drivel. As one consumer noted "[t]he funny part about this is that there's a 20% surcharge/fee for tickets, so basically @StubHub is just waiving a fee for a future purchase LOL."[5] Another consumer correctly observed "[a]s a buyer you pay 20% or more in fees so your [sic] just giving them an interest free loan. That also doesn't include the risk of them going out of business."[6] Other consumers just asked for lawyers.[7]

9. Worse, on March 27, 2020 StubHub posted a "Coronavirus update" on its website stating that when an event is cancelled, StubHub would charge resellers to recoup the amounts buyers had paid for cancelled events. In other words, StubHub possesses funds it collected from resellers for tickets to now-cancelled events. This money belongs to ticket buyers like Plaintiff but StubHub has improperly decided to convert those funds for its own use.

10. Plaintiff and the Class of Defendants' customers she seeks to represent have been injured by Defendants' unlawful practices. Accordingly, Plaintiffs and the Class defined below seek an immediate public injunction requiring StubHub to honor its longstanding refund policy, damages,

---

[3] *Available at*: https://twitter.com/stubhub/status/1243738305658830851.

[4] *Id.*

[5] *Id.*

[6] *Available at*: https://twitter.com/darrenrovell/status/1243710053066182658.

[7] *Id.*

restitution, equitable relief for StubHub's consumer fraud, unjust enrichment, and breach of contract.

11.     Only through a class action can Defendants' customers remedy Defendants' ongoing wrongdoing. Because the harm suffered by each customer is small compared to the much higher cost a single customer would incur in trying to challenge Defendants' unlawful practices, it makes no financial sense for an individual customer to bring his or her own lawsuit. Further, many customers don't realize they are victims of Defendants' deceptive conduct. With this class action, Plaintiff and the Class seek to level the playing field and make sure that companies like StubHub engage in fair and upright business practices.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 class members and diversity of citizenship exists between at least one member of the Class and Defendants.

13.     This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located in this District, Defendants are registered to and do conduct continuous, permanent, and substantial business activities in California and within this District, and a substantial portion of the acts complained of took place in California.

14.     Venue is proper in the Northern District of California because Defendants reside and conducts substantial business within this District and a substantial part of the events that gave rise to Plaintiff's claims occurred in this District.

15.     Intradistrict assignment: assignment to the San Francisco or Oakland Division would be proper because StubHub is headquartered in San Francisco, California, and a substantial part of the events or omissions which give rise to the claims alleged herein occurred in San Francisco.

## PARTIES

16.     Plaintiff Wood is a citizen of New York residing in Brooklyn, New York. On October 4, 2019 Plaintiff purchased two tickets to the March 20, 2020 Billie Eilish concert in Brooklyn. Plaintiff paid a total of $484.70 for the two tickets, including $115.70 to StubHub for fees. The email confirmation Plaintiff received from StubHub for this purchase urged Plaintiff to "[r]emember, your order is covered

4

by our FanProtect™ Guarantee." On March 11, 2020 the World Health Organization declared COVID-19 a pandemic. On March 12, New York Mayor Bill de Blasio declared a state of emergency, with Broadway going dark, the opera silenced, and museums closing their doors. That same day New York Governor Andrew Cuomo banned gatherings of more than 500 people. On March 15, all NYC schools were closed.  On March 16, the governors of New York, New Jersey, and Connecticut ordered the closure of all non-essential businesses and banned gatherings of over 50 people across all three states. During this time in mid-March 2020 Plaintiff learned that the Billie Eilish concert had been indefinitely postponed, to wit, canceled. StubHub has refused Plaintiff's refund request.

17.     Defendant Stubhub, Inc. is a Delaware corporation headquartered in San Francisco, California. Defendants own and operate StubHub as a marketplace for event tickets. The market operates primarily through Defendants' website, www.Stubhub.com.

18.     On the website, sellers list tickets for sale to events like concerts, sporting events, comedy shows, and theater. Buyers can purchase these tickets through Defendants' website. Defendants charge fees to both the buyers and sellers for this service.

19.     Defendants John Does 1 to 10 are the additional individuals and entities who perpetrated the unlawful acts described herein.

## FACTUAL ALLEGATIONS

20.     StubHub's website provides a marketplace where ticket resellers can offer tickets to live entertainment to potential ticket purchasers. Consumers can use StubHub's website or use one of StubHub's mobile apps to find tickets available for purchase. To purchase tickets, consumers pay StubHub the price set by the reseller as well as substantial additional fees that StubHub charges in exchange for providing the marketplace as well as guaranteeing buyers' purchases. After the transaction, StubHub delivers the ticket to the buyer and pays the reseller. StubHub keeps the additional fees.

21.     In 2019 alone, StubHub made over $1 billion in fees and commissions. The company bills itself as the world's largest ticket marketplace and was recently purchased for $4.05 billion

22.     StubHub was founded in 2000 with the goal of converting the shady, secondary scalpers ticket market into a contactless and inviting marketplace that would significantly expand the secondary ticket market. Prior to internet middlemen like StubHub, consumers who missed out on purchasing

tickets directly from the issuer often had little choice but to purchase tickets from a scalper. If something went wrong, the buyer was out of luck. As a StubHub co-founder Jeff Fluhr put it "you had the consumer perception of the guy with the trench coat at the game, trying to hawk tickets out of the trunk of his car."[8] "Any time there is a fundamental consumer need for something, but . . . there's a lack of trust, that means there's a problem that could be fixed" Fluhr noted.[9]

23.    To build a marketplace that would combat consumer unease about the secondary ticket marketplace, StubHub issued its trademarked FanProtect Guarantee. "The guarantee was in many ways the nucleus of the value proposition that we were offering," Fluhr said.[10] "People were skeptical about buying tickets. We were trying to be the solution and the safe alternative."[11]

24.    StubHub then set out on a years-long marketing campaign to ensure that consumers knew about the FanProtect Guarantee. As StubHub's Chief Marketing Officer Ray Elias put it, "it came down to being able to name it the FanProtect Guarantee, and to reinforcing and reinforcing and reinforcing that StubHub, like any best-in-class e-commerce company, was going to stand behind the product that we're selling."[12]

25.    Part of the FanProtect Guarantee is StubHub's commitment to provide a full refund for cancelled events.  StubHub has confirmed this fact several times over the years, including StubHub's President's March 8, 2020 email to Plaintiff.

26.    Understandably, the consuming public's response to StubHub's retroactive refusal to honor its FanProtect Guarantee has been fierce.  Below is just a small sample of the massive consumer backlash that can be found on the internet:

---

[8] *Available at*: https://www.sportsbusinessdaily.com/Journal/Issues/2013/09/16/In-Depth/StubHub.aspx.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*



**Shoelover** @Shoesinthe818

Replying to @darrenrovell and @don_shano

100% illegal @StubHub - I look forward to joining the class action lawsuit.

9:58 · 28 Mar 20 · Twitter Web App

**TheWindts** @TWindts · 6d
Hey #stubhub. I live in MN & bought tix for Chicago Blackhawks game that is cancelled. Your email said I would get full refund and now I get a credit?? Your policy sucks and I want my money back. DM me pls

♡ 4

**sportyblue** @Sportyblue1 · 01 Apr
Replying to @spookyMN @darrenrovell and @don_shano
Stubhub already did a chargeback for tickets that were sold. And then are keeping the money for tickets bought. Quite the racket they have going on.

**Somewhere over Dwayne Bowe** @Cort9999

Replying to @darrenrovell and @don_shano

Lawsuits forthcoming....

21:30 · 27 Mar 20 · Twitter for iPhone

**Overworked Momager** @lilgee313 · 3d
I will never purchase anything from @StubHub again. Y'all think you're slick changing your policy midway through this Quarintine and only giving credit. WTF is that?! I don't even use you guys like that to justify a credit. #StubHub

**Kelly B. McGillivray** @kellybmcg

Replying to @darrenrovell and @don_shano

guessing StubHub did not discuss this with their legal team

20:29 · 27 Mar 20 · Twitter for Android

**Dr. Not So Feel Good** @FrankZ1... · 29 Mar
Replying to @darrenrovell and @don_shano
I want my money back
Not a f-iing coupon

**A.J. Rizzo** @ajarjr

Replying to @calph7

They sent us an email last week giving us the choice of money back or the extra 20%. Now they went back on that email.

6:48 · 28 Mar 20 · Twitter for iPhone

**Chris Goodman** @Biwabik01 · 27 Mar
Replying to @darrenrovell @seanmdav and @don_shano
SUE. THEM. #StubHubCrooks

7





**CLASS ALLEGATIONS**

27.     Plaintiff sues on her own behalf and on behalf of a Class for injunctive relief, damages, and all other available relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure. The Class is preliminarily defined as:

> All persons residing in the United States who purchased tickets on StubHub
> to events that were cancelled in 2020

28.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

29.     Excluded from the Class are the officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or have had a controlling interest. Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

30.     Plaintiff does not know the exact size of the Class, since such information is in the exclusive control of Defendants. Plaintiff believes, however, that based on the publicly available data concerning StubHub's customers in the United States, the Class encompasses more than one million individuals whose identities can be readily ascertained from Defendants' records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

31.     The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to each Class Member, in compliance with all applicable federal rules.

32.     Plaintiff is an adequate class representative. Her claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by Defendants. Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct.

33.     Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff

9

has retained competent and experienced class action attorneys to represent her interests and those of the Class.

34.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers which are apt to drive the resolution of this action. These questions include, without limitation, whether it was deceptive or unfair for StubHub to retroactively switch from providing refunds for cancelled events to coupons and whether as a matter of equity and good conscience StubHub should be required to return money paid by its customers for cancelled events.

35.     A class action is superior to all other available methods for resolving this controversy because i) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct; iii) Defendants have acted or refused to act on grounds generally applicable to all Class Members; and iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

36.     Further, there are numerous issues that are also appropriately resolved on a class-wide basis under FED. R. CIV. P.  23(c)(4), including without limitation whether it was deceptive or unfair for StubHub to retroactively switch from providing refunds for cancelled events to coupons, and whether as a matter of equity and good conscience StubHub should be required to return money paid by its customers for cancelled events.

37.     Accordingly, this action satisfies the requirements set forth under FED. R. CIV. P.  23(a), 23(b), and 23(c)(4).

## CHOICE OF LAW ALLEGATIONS

38.     The State of California has sufficient contacts to class members' claims such that uniform application of California law to those claims is appropriate.

39.     StubHub has been headquartered in San Francisco, California, since its founding in 2000,

10

StubHub does substantial business in California, large portion of the class is located in California, and all the core decisions that gave rise to class members' claims were made from California.

40.     StubHub's FanProtect Guarantee was developed in California, as was the prolonged marketing that created pervasive awareness of the FanProtect Guarantee among consumers.

41.     Likewise, the decision to switch from providing refunds for cancelled events to coupons in the midst of a global pandemic was made by StubHub's personnel based at StubHub's headquarters in San Francisco, California, as was the related decision to charge third-party resellers for money owed to StubHub's customers.

42.     StubHub also includes a California choice-of-law provision in its StubHub Marketplace Global User Agreement. Although Plaintiff and the proposed class did not have proper notice of and did not agree to that Global User Agreement, the agreement reflects StubHub's acquiescence to the application of California law and expectation that California law will apply to claims brought by its customers.

43.     The State of California also has a strong regulatory interest in applying its law to all class members' claims. California's consumer protection law, in particular, is designed to preserve a business climate in California free of unfair and deceptive practices. If California were only able to address unfair business conduct when the injured consumer resides in California, that consumer protection law would be largely ineffective at regulating companies who do business in all fifty states. Violators would be able to keep the vast majority of their ill-gotten gains (all those obtained from non-California consumers), leaving California-based companies like StubHub undeterred from engaging in similar conduct in the future.

## FIRST CAUSE OF ACTION

**Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et sq.***

44.     Plaintiff incorporates all preceding factual allegations as if fully set forth here.

45.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

46.     Plaintiff and each member of the Class are consumers who purchased tickets from Defendants for personal, family or household purposes.

47.     Plaintiff and the Class are "consumers" as that term is defined by the California Consumers Legal Remedies Act (the "CLRA") in Cal. Civ. Code § 1761(d).

48.     Defendants' ticket sales to Plaintiff and Class members are a "service" within the

11

meaning of Cal. Civ. Code § 1761(b).

49.     Defendants' actions, representations, and conduct are covered by the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of services to consumers. Defendants sold tickets to Plaintiff and the Class members with the FanProtect Guarantee promising to provide a refund if the event was cancelled.

50.     Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continue to violate CLRA Section 1770(a)(5), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the particular characteristics, benefits and quantities of their services.

51.     Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendants violated and continue to violate CLRA Section 1770(a)(7), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the particular standard, quality or grade of their services.

52.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants advertise services with the intent not to sell the services as advertised.

53.     Cal. Civ. Code § 1770(a)(14) prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." By engaging in the conduct set forth herein, Defendants violated and continue to violate CLRA Section 1770(a)(14), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent the rights, remedies, and obligations of their

12

services.

54.     Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By engaging in the conduct set forth herein, Defendants violated and continue to violate CLRA Section 1770(a)(16), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent that their ticket sales have been supplied in accordance with their previous representations regarding the FanProtect Guarantee when they have not.

55.     Plaintiff and the Class acted reasonably when they purchased tickets from Defendants on the belief that Defendants' representations were true and lawful.

56.     Plaintiff and the Class suffered injuries caused by Defendants because (a) they would not have purchased tickets from StubHub absent Defendants' representations that they would get a refund if the event was cancelled; (b) they paid a price premium for tickets they purchased from Defendants based on Defendants' misrepresentations; and (c) Defendants' ticket sales did not have the characteristics, benefits, or quantities as promised.

57.     In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class seek injunctive and equitable relief for Defendants' CLRA violations. Plaintiff has mailed an appropriate demand letter consistent with California Civil Code § 1782(a). If Defendants fail to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for claims for actual, punitive, and statutory damages, as appropriate.

## SECOND CAUSE OF ACTION

**Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

58.     Plaintiff incorporates all preceding factual allegations as if fully set forth here.

59.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

60.     Cal. Bus. & Prof Code § 17200, *et seq.* (the "UCL") prohibits acts of "unfair competition," including any unlawful, fraudulent, or unfair business acts or practices.

61.     Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.

62.     Defendants committed unlawful practices because they violated *inter alia* Section 5 of

13

the Federal Trade Commission Act, 15 U.S.C. § 45(a), which declares unlawful unfair and deceptive acts or practices in or affecting commerce. Defendants' conduct as alleged herein is both unfair and deceptive.

63.     Defendants also committed unlawful practices because they violated *inter alia* the Consumers Legal Remedies Act, the False Advertising Law, and other applicable law as described herein.

64.     Plaintiff reserves the right to allege other violations of law which constitute other unlawful business acts or practices as Defendants' conduct is ongoing and continues to this date.

65.     Under the "unfair" prong of the UCL, a business practice is unfair if that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

66.     Defendants committed unfair acts and practices by *inter alia* Defendants' refusal to refund money for tickets to events that have been cancelled.

67.     Defendants' acts and practices are unfair because the gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason, particularly considering the available legal alternatives which exist for Defendants to conduct their business in response to COVID-19.  Defendants' acts and practices are also immoral, unethical, unscrupulous, and offend established public policy and are substantially injurious to Plaintiff and the other members of the Class and could not have been reasonably avoided by Plaintiff and the Class.

68.     Defendants violated the fraudulent prong of the UCL by misleading Plaintiff and the Class to believe that they would receive a refund for tickets for an event purchased from StubHub if the event was canceled.

69.     Plaintiff and the Class acted reasonably when they purchased tickets from Defendants on the belief that canceled events would be fully refunded.

70.     As a result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and the Class have suffered an injury in fact and have lost money in an amount to be determined at the trial of this action.

71.     Plaintiff and the other members of the Class are entitled to an order pursuant to Cal. Bus.

& Prof Code §17203, enjoining Defendants' unlawful and unfair conduct, and such other orders and judgments necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff and the Class any amounts assessed and/or paid as a result of Defendants' wrongful conduct.

**THIRD CAUSE OF ACTION**

**Violations of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.***

72.     Plaintiff incorporates all preceding factual allegations as if fully set forth here.

73.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

74.     California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

75.     Defendants advertised and promoted StubHub's FanProtect Guarantee by promising to give refunds to its customers if events were cancelled. Defendants' advertisements and inducements were made in and originated from California and fall within the definition of advertising as contained in the FAL in that the FanProtect Guarantee was intended to induce consumers to purchase tickets from StubHub. Defendants knew that those statements were false and misleading when StubHub retroactively changed its policy and refused to offer refunds for events that were cancelled.

76.     Defendants' advertising that StubHub would provide refunds for events that were cancelled was false and misleading to a reasonable consumer, including Plaintiff, because Defendants in fact refused to provide refunds to ticket purchasers for events that were cancelled.

77.     Defendants violated the FAL by misleading Plaintiff and the Class to believe that they would receive refunds if the events they purchased tickets for were cancelled.

78.     Defendants knew or should have known, through the exercise of reasonable care that their statements about refunds were false and misleading.

79.     Plaintiff and the Class lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased tickets from StubHub absent Defendants' representations

15

that StubHub would provide refunds if the event was cancelled; (b) they would not have purchased tickets on the same terms absent Defendants' misrepresentations; (c) they paid a price premium for tickets based on Defendants' misrepresentations; and (d) Defendants' ticket sales did not have the characteristics, benefits, or quantities as promised.

## FOURTH CAUSE OF ACTION

### Conversion

80.     Plaintiff incorporates all preceding factual allegations as if fully set forth here.

81.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

82.     Plaintiff and the Class purchased tickets from third-party resellers, with StubHub acting as the intermediary for those purchases. StubHub has publicly confirmed that it is not the seller for purchases made through its website or mobile apps, including by repeatedly stating: "We do not own any of the tickets listed on our site. When buyers place an order for tickets on our site, they are purchasing from a third-party individual seller."

83.     The events for which Plaintiff and the Class purchased tickets were cancelled. When an event is cancelled, the original ticket vendor has an obligation to repay the original purchaser. Likewise, if the tickets were resold, as they were here, the reseller has an obligation to repay the secondary purchaser. Accordingly, Plaintiff and the Class are legally and equitably entitled to the funds they paid third-party resellers for their tickets.

84.     Defendant StubHub is in possession of the refunds to which Plaintiff and class members are entitled. As StubHub stated in its "Coronavirus update," it is charging third-party resellers to recoup any proceeds it previously turned over to the resellers.

85.     Instead of turning the refunds over to Plaintiff and the Class, StubHub has converted them for its own use and is instead giving buyers a coupon that is valid only for future tickets purchased through StubHub, and only for a limited time.

86.     Plaintiff and the Class did not consent to StubHub's taking possession of the money owed to them by the third-party resellers and did not consent to StubHub's conversion of that money for its own use.

87.     As a result of StubHub's conversion, Plaintiff and the Class have lost the use of their

money during a public-health and economic crisis and have suffered damages in an amount according to proof.

88.     Plaintiff and the Class seek an award of compensatory and punitive damages against StubHub, whose conduct evidences a willful, wanton, and reckless disregard for the rights, health, and safety of Plaintiff and the Class.

### FIFTH CAUSE OF ACTION

### Restitution – Money Had and Received

89.     Plaintiff incorporates all preceding factual allegations as if fully set forth here.

90.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

91.     Without intending to make an election of remedies, Plaintiff and the Class seek restitution from Defendants for money had and received.

92.     Defendants received money from Plaintiff and the Class that was intended to be used for their benefit.

93.     Defendants did not use the money received from Plaintiff and the Class for their benefit and has not returned the money to them. As a matter of equity and good conscience, that money should be returned to Plaintiff and Class.

### SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

94.     Plaintiff incorporates all preceding factual allegations as if fully set forth here.

95.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

96.     Defendants misrepresented that StubHub provides refunds for tickets purchased for events that are cancelled. However, Defendants in fact refuse to provide refunds for tickets to events that are cancelled.

97.     At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

98.     Defendants also negligently misrepresented and/or negligently omitted material facts about StubHub's ticket refund policy.

99.     The negligent misrepresentations and omissions made by Defendants, upon which

17

Plaintiff and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class to purchase tickets from Defendants.

100. Plaintiff and the Class would not have purchased tickets from Defendants or would not have purchased the tickets on the same terms, if the true facts had been known.

101. The negligent actions of Defendants caused damage to Plaintiff and the Class members, who are entitled to damages and other legal and equitable relief as a result.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

102. Plaintiff incorporates all preceding factual allegations as if fully set forth here.

103. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

104. As a result of their unjust conduct, Defendants have been unjustly enriched.

105. By reason of Defendants' wrongful conduct, Defendants have benefited from receipt of improper funds, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.

106. As a result of Defendants' conduct it would be unjust and/or inequitable for Defendants to retain the benefits of their conduct without restitution to Plaintiffs and the Class. Accordingly, Defendants must account to Plaintiffs and the Class for their unjust enrichment.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the class of similarly situated individuals, requests that the Court:

a) Issue an order certifying the Class defined above, appointing the Plaintiff as Class Representative, and designating the undersigned firms as Class Counsel;

b) Find that Defendants have committed the violations of law alleged herein;

c) Render an award of compensatory damages of at least $100,000,000, the precise amount of which is to be determined at trial;

d) Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

e) Declare that Defendants have committed the violations of law alleged herein;

f)   Render an award of punitive damages;

g)   Enter judgment including post and prejudgment interest, costs and expenses, reasonable attorneys' fees; and

h)   Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  June 22, 2020

*/s/ Tina Wolfson*
Tina Wolfson
Theodore W. Maya
Bradley K. King
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
bking@ahdootwolfson.com

WITTELS MCINTURFF PALIKOVIC
Steven L. Wittels*
J. Burkett McInturff*
Tiasha Palikovic*
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
tpalikovic@wittelslaw.com
(* *pro hac vice* applications forthcoming)

*Attorneys for Plaintiff and the Proposed Class*

19

### AFFIDAVIT OF TINA WOLFSON

I, Tina Wolfson, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff Stephanie Wood ("Plaintiff") in this action. I am admitted to practice law in California and before this Court, and I am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(d). I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Venue is proper in this Court because Plaintiff suffered injuries as a result of actions of Defendant StubHub, Inc. ("Defendant") in San Francisco County, many of the acts and transactions giving rise to this action occurred in San Francisco County, and Defendant (1) resides and conducts business in this County, (2) has intentionally availed itself of the laws and markets of California and the County of San Francisco through the provision of its services in this County, and (3) is subject to personal jurisdiction in this County.

3.      Plaintiff is a citizen and resident of Kings County in New York.

4.      Defendant is a Delaware corporation with its principal place of business located within the County of San Francisco at 199 Fremont Street, San Francisco, California 94105.

I declare under penalty of perjury under the laws of the State of California this 22nd day of June, 2020, in Los Angeles, California that the foregoing is true and correct.


         _/s/ Tina Wolfson_____
         Tina Wolfson